Peter BURNETT, Petitioner,

v.

MUNICIPALITY OF ANCHORAGE, Respondent.

Daniel C. RYAN, Petitioner,

v.

MUNICIPALITY OF ANCHORAGE, Respondent.

Raymond ROOP, Petitioner,

v.

STATE OF ALASKA, Respondent.

No. A84–454 Civ.

United States District Court, D. Alaska.

Feb. 28, 1986.

William F. Dewey, Office of Public Advocacy, Anchorage, Alaska, for Peter Burnett.

Jack D. Clark, Anchorage, Alaska, for Daniel C. Ryan.

D. Scott Dattan, Anchorage, Alaska, for Raymond R. Roop.

James F. Wolf, Municipal Prosecutor, Municipality of Anchorage, Department of Law, Anchorage, Alaska, Jeffrey Cole, Asst. Atty. Gen., State of Alaska, Anchorage, Alaska, for respondent.

## ORDER

HOLLAND, District Judge.

The three petitioners separately seek federal habeas relief pursuant to 28 U.S.C. § 2254 from their state court convictions for refusal to submit to chemical tests after being stopped for driving while intoxicated. The United States Magistrate has issued his final report and recommendation in all three cases, objections have been filed and considered, the Court has heard oral argument, and the case is now ready for the Court's consideration.

Peter Burnett, Daniel Ryan, and Raymond Roop were lawfully stopped and arrested on separate occasions during 1983 and 1984 for driving while intoxicated, Burnett and Ryan by Anchorage police officers and Roop by an Alaska state trooper. All three were warned of the implied consent law [1] and the sanctions for refusal to submit to a chemical test of their breath.[2] When the arresting officers asked them to take the breathalyzer test, they all peacefully refused. Burnett and Ryan were charged with violations of the Anchorage Municipal Code (AMC) for driving while intoxicated, AMC 9.28.020, and for refusing to submit to the chemical test, AMC 9.28.-022. Roop was charged with violations of Alaska law for driving while intoxicated,

---

1. AS 28.35.031 provides, in relevant part:

    *Implied consent.* (a) A person who operates or drives a motor vehicle in this state ... shall be considered to have given consent to a chemical test or tests of the person's breath for the purpose of determining the alcoholic content of the person's blood or breath if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating or driving a motor vehicle ... while intoxicated.

    The Anchorage Municipal Code, AMC 9.28.-021, provides in relevant part:

    *Implied consent.*

    A. A person who operates, drives or is in actual physical control of a motor vehicle within the municipality ... shall be considered to have given consent to a chemical test or tests of his or her breath for the purpose of determining the alcoholic content of his or her blood or breath if lawfully arrested for an offense arising out of acts alleged to have been committed while the person was operating, driving or in actual physical control of a motor vehicle....

2. AS 28.35.032 provides, in relevant part:

    *Refusal to submit to chemical test.* (a) If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test under AS 28.35.031(a), after being advised by the officer that the refusal will, if that person was arrested while operating or driving a motor vehicle for which a driver's license is required, result in the denial or revocation of the license or non-resident privilege to drive, that the refusal may be used against the person in a civil or criminal action or proceeding arising out of an act alleged to have been committed by the person while operating or driving a motor vehicle ... while intoxicated, and that the refusal is a misdemeanor, a chemical test shall not be given, except as provided by AS 28.35.035.

    ....

    (g) Upon conviction of a person under this section, the court shall impose a minimum sentence of imprisonment of not less than 72 consecutive hours and a fine of not less than $250....

    The Anchorage Municipal Code, AMC 9.28.-022, provides in relevant part:

    *Refusal to submit to chemical tests.*

    A. If a person under arrest refuses the request of a law enforcement officer to submit to a chemical test under AMC 9.28.021A, after being advised by the officer that the refusal will, if that person was arrested while operating or driving a motor vehicle for which a driver's license is required, result in the denial or revocation of the license or nonresident privilege to drive, that the refusal may be used against the person in a civil or criminal action or proceeding arising out of an act alleged to have been committed by the person while operating or driving a motor vehicle ... while intoxicated, and that the refusal is a misdemeanor, a chemical test shall not be given....

    ....

    D. Upon conviction ... the court shall impose a minimum sentence of:

    1. imprisonment of not less than 72 consecutive hours and a fine of not less than $250.00....

AS 28.35.030, and for the refusal of the chemical test, AS 28.35.032. On pre-trial motions to dismiss, all three argued unsuccessfully that the refusal statutes under which they were charged violated their rights under the fourth and fourteenth amendments to the United States Constitution.

Burnett and Roop subsequently pled *nolo contendere* to the refusal charges, preserving under a state procedure their right to appeal their convictions. In both cases, prosecutors dropped the driving while intoxicated charges. Burnett was fined, sentenced to 30 days imprisonment with 27 suspended and 3 days to serve; Roop was fined and sentenced to 60 days in jail with 52 days suspended. Ryan went to trial on both charges and was acquitted of driving while intoxicated but convicted on the refusal charge. He was sentenced to 180 days with 140 suspended and 40 days to serve.

All three petitioners took appeals from their convictions, arguing again that the law under which they were convicted violated their federal constitutional rights under the fourth and fourteenth amendments. The Alaska Court of Appeals rejected Burnett's claims, affirmed the conviction in a reported opinion, *Burnett v. Municipality of Anchorage*, 678 P.2d 1364 (Alaska Ct. App.1984), and then denied a request for a rehearing. A petition for hearing in the Alaska Supreme Court was denied, as was a petition for a writ of certiorari in the United States Supreme Court. Ryan took an appeal of right to the Alaska Superior Court where his constitutional arguments were rejected and his conviction affirmed in an unreported decision of May 31, 1985. He sought no further relief in the state courts. The Alaska Court of Appeals also rejected Roop's arguments, citing to *McCracken v. State*, 685 P.2d 1275 (Alaska Ct.App.1984). *Roop v. State*, No. A–375 (*per curiam*) (Alaska Ct.App. Sept. 19, 1984). The Alaska Supreme Court summarily denied Roop's petition for a hearing, and the United States Supreme Court denied his petition for a writ of certiorari.

Burnett, Ryan, and Roop then filed the present actions. Their sentences have been stayed in the state courts pending the resolution of the habeas corpus proceedings. The three cases have been consolidated for purposes of consideration in this Court.

The petitioners have agreed that the following is an accurate statement of the issues to be decided:

(1) Whether a breathalyzer test is a consensual warrantless search under the fourth amendment; and if so, may the state impose mandatory imprisonment upon a motorist who peacefully refuses consent?

(2) Does the imposition of criminal penalties upon a motorist for his peaceful refusal to submit to a breath test violate his right to equal protection under the law, guaranteed by the fourteenth amendment, by creating a special class of citizens who are not protected by the fourth amendment?

(3) Does the imposition of criminal penalties upon a motorist for his peaceful refusal to submit to a breath test impose an unconstitutional condition upon the exercise of his fourth amendment rights, contrary to the equal protection clause of the fourteenth amendment?

In his report and recommendations, the Magistrate found no procedural bar to the bringing of these petitions for a writ of habeas corpus. On the merits of the petitions, he found that Burnett, Ryan, and Roop had no constitutional right to refuse the test, and that the operation of the refusal statutes did not create such a right. He reported that the statutes at issue did not single out a special class for unequal treatment and did not burden the exercise of any constitutional right. He based these findings, in the main, on the Supreme Court's holding in *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). In conclusion, he recommended that since the statutes violated no right under the fourth and fourteenth amendments, the petitions should be denied.

On our review of the record in all these cases, and after careful consideration of the arguments of counsel and the Magistrate's report and recommendations, this Court concludes that his recommendation should be adopted and the petitions denied.

A petitioner seeking federal habeas corpus relief must first comply with the requirements of 28 U.S.C. § 2254(b) which provides:

> An application for a writ of habeas corpus in behalf of any person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

■ Although the issue has not been raised, the statutory requirement that the petitioner be in custody is no bar to the present actions. A defendant whose sentence has been stayed in the state court pending the resolution of federal habeas proceedings is in custody for purposes of 28 U.S.C. § 2254. *Hensley v. Municipal Court*, 411 U.S. 345, 351, 93 S.Ct. 1571, 1574, 36 L.Ed.2d 294 (1973).

The exhaustion requirement of 28 U.S.C. § 2254(b) is principally designed to protect the state courts' role in the enforcement of federal law, prevent disruption of state judicial proceedings, and minimize friction between the federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.

*Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). The Magistrate found that Burnett and Roop had properly raised in the state court proceedings all the claims presented here and that they had exhausted their state remedies. The Magistrate also found that, although Ryan had not sought relief beyond the state superior court, he was excused from doing so on the basis that further resort to state forums would have been futile.[3] This Court adopts those findings and conclusions.

In the proceedings before the Magistrate, the Municipality argued that *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), would bar Burnett from federal habeas relief. In that far-reaching case, the Supreme Court held that where a state has provided an opportunity for full and fair litigation of a fourth amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. In an apparent effort to rein in some of the implications of that language, the Supreme Court has since noted:

> In *Stone v. Powell*, however, the Court carefully limited the reach of its opinion. It stressed that its decision to limit review was "*not* concerned with the scope of the habeas corpus statute as authority for litigating constitutional claims generally".
>
> Rather, the Court made it clear that it was confining its ruling to cases involving the judicially created exclusionary rule, which had minimal utility when ap-

---

**3.** The futility doctrine was adopted by the Ninth Circuit in *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir.1981). In arguing its applicability to his petition, Ryan cites not only *Burnett v. Municipality of Anchorage*, 678 P.2d 1364 (Alaska Ct. App.1984), but also *McCracken v. State*, above, and *Roop v. State*, above, as excusing his failure to seek discretionary review beyond the Alaska Superior Court. In both of the latter cases, the Alaska Court of Appeals rejected constitutional challenges to the Alaska refusal statute similar to those made here, and then denied rehearings. Roop (but not McCracken) petitioned for a hear-

ing before the Alaska Supreme Court, but that petition was denied summarily.

In his review of the cases and the record before him, the United States Magistrate found neither an indication that the Alaska courts intended to depart from their decisions on the constitutionality of the refusal statute, nor that there had been any intervening decisions from the United States Supreme Court that might force such a departure. On the basis of *Sweet v. Cupp*, above, the Magistrate then determined that Ryan should be excused from further pursuit of state remedies.

plied in a habeas corpus proceeding. "In sum," the Court concluded, it was holding "only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review."

*Rose v. Mitchell*, 443 U.S. 545, 560, 99 S.Ct. 2993, 3002, 61 L.Ed.2d 739 (1979) (citations omitted, emphasis in original).

It is in cases characterized by the *Stone* court as "typical Fourth Amendment claim[s]", in which the petitioner seeks habeas review of "an issue that has no bearing on the basic justice of his incarceration", *Stone v. Powell*, 428 U.S. at 491–92, n. 31, 96 S.Ct. at 3051, n. 31, that *Stone* will preclude habeas review. The rationale of *Stone* is based on concerns peculiar to the court-created exclusionary rule: the perceived minimal deterrent effect of the rule when applied during collateral review of a case, and the exclusion of highly probative evidence with resulting disruption of the truth-finding process. *Berg v. Morris*, 483 F.Supp. 179, 184 (E.D.Cal.1980); *see, also, Hinman v. McCarthy*, 676 F.2d 343, 348 (9th Cir.1982) ("The [*Stone*] Court suggested that habeas relief should be available primarily for the vindication of constitutional rights that affect the determination of the accused's guilt or innocence, which is not the case in a typical Fourth Amendment claim.").

The *Stone* rationale is inapplicable in cases such as the one now before this Court. Although the petitioners are challenging the validity of a purported search, they are not doing so in the context of an objection to the admissibility of evidence, but rather as part of a challenge to the very constitutionality of the statutes under which they were convicted. The Magistrate found that *Stone* was no bar to these actions. This Court adopts that conclusion. *See Rose v. Mitchell*, 443 U.S. at 560–63, 96 S.Ct. at 3002–04; *see, also*, W. LaFave & J. Israel, *Criminal Procedure* § 27.3 321–24 (1984).

There being no procedural bar to these actions, the Court now moves to the merits of the claims made by Burnett, Ryan, and Roop.

Broken down to its essentials and stripped of its rhetoric, petitioners' argument is disarmingly simple. They argue that the breathalyzer test is a warrantless consensual search for which they have been forced to provide their consent in violation of *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973) ("[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given."). The imposition of criminal penalties upon a motorist who peacefully refuses to consent to the test, they claim, violates the equal protection clause in two ways. First, it creates a special class of citizens who are not protected by the fourth amendment. Second, it imposes an unconstitutional condition—the restraint of personal liberty—upon the exercise of fourth amendment rights. Thus, they assert, they have been convicted and sentenced under an ordinance that is violative of the United States Constitution.

The Court begins its analysis of this argument with some general principles. The fourth amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The fourth amendment thus proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the fourth amendment, subject only to a few specific and well-delineated exceptions. *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). One such

exception is a search incident to a lawful arrest. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969). Another is the search pursuant to a voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. at 222, 93 S.Ct. at 2045.

The threshold issue then is whether the taking of a breath sample for purposes of a breathalyzer test from a motorist lawfully arrested is a search protected by the reasonableness requirement of the fourth amendment. The fundamental inquiry begins from this point:

> What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Katz v. United States*, 389 U.S. 347, 351–52, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) (citations omitted).

On the basis of this "reasonable expectation of privacy" theory, *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968), the Court has since held that the demand for physical characteristic evidence is not a search. *Davis v. Mississippi*, 394 U.S. 721, 724–28, 89 S.Ct. 1394, 1396–98, 22 L.Ed.2d 676 (1969) (fingerprints); *United States v. Dionisio*, 410 U.S. 1, 14, 93 S.Ct. 764, 771, 35 L.Ed.2d 67 (1973) (voice exemplars); *United States v. Mara*, 410 U.S. 19, 21, 93 S.Ct. 774, 775, 35 L.Ed.2d 99 (1973) (handwriting exemplars). On the other hand, the Court has held that the taking of some physical characteristic evidence is a search and thus subject to the reasonableness requirement. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 1833, 16 L.Ed.2d 908 (1966) (blood samples); *Cupp v. Murphy*, 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973) (fingernail scrapings). The Supreme

Court has recently reaffirmed the *Schmerber* holding in deciding that a proposed search to remove a bullet from the body of a suspect would be an unreasonable search proscribed by the fourth amendment. *Winston v. Lee*, 470 U.S. 753, 105 S.Ct. 1611, 1616–20, 84 L.Ed.2d 662 (1985).

Looking at the question of searches in yet another context and from a different perspective, the Supreme Court has held that subjecting personal belongings to sniff tests by trained dogs is not a search. The Court based its decision on rationales that may be applicable to the present case: the sniff test does not require opening the luggage, discloses only the presence or absence of narcotics (*but see Doe v. Renfrow*, 475 F.Supp. 1012, 1017 (N.D.Ind.1979), *modified*, 631 F.2d 91 (7th Cir.1980), *cert. denied*, 451 U.S. 1022, 101 S.Ct. 3015, 69 L.Ed.2d 395 (1981) ("No marijuana or other drugs were found in plaintiff's possession, although it was later discovered that plaintiff had been playing with one of her dogs that morning of the search and that dog was in heat.")), does not expose other noncontraband items, and results in less embarrassment and inconvenience than other methods would entail. *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983).

■ The parties to this action have agreed that the demand for a breath sample is a search. The Alaska Court of Appeals, conceding the closeness of the issue, has assumed *arguendo* that a breathalyzer test is a search. *Burnett v. Municipality of Anchorage*, 678 P.2d at 1368.[4] Although the United States Supreme Court has not squarely confronted the issue, it seemingly has foreclosed the argument that a breath test is not a search. Speaking of fourth and fifth amendment challenges to the compulsory administration of a blood test, the Court has said:

---

**4.** Subsequent to deciding *Burnett,* the Alaska Court of Appeals reexamined this question in another case involving AS 28.35.031(b) (the administration of a preliminary breath test). Citing to *Pooley v. State,* 705 P.2d 1293 (Alaska Ct.App.1985) (holding that a dog sniff is a

search under the Alaska Constitution), the court held that requiring a suspect to submit to a breath test is sufficiently intrusive that it should be regarded as a search. *Leslie v. State of Alaska,* 711 P.2d 575 (Alaska Ct.App.1986).

But if compulsory administration of a blood test does not implicate the Fifth Amendment, it plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment. That Amendment expressly provides that "[t]he right of the people to be secure in their *persons*, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." (Emphasis added.) It could not reasonably be argued, and indeed respondent does not argue, that the administration of the blood test in this case was free of the constraints of the Fourth Amendment. Such testing procedures plainly constitute searches of "persons" ... within the meaning of that Amendment.

*Schmerber v. California*, 384 U.S. at 767, 86 S.Ct. at 1834. This language, though concerned with blood tests for alcohol content, has obvious applicability to the demand for a breath sample. The difference between the two tests is relatively insignificant. In both there is a seizure, and the material seized comes from within the suspect's body. *Commonwealth v. Quarles*, 229 Pa.Super. 363, 324 A.2d 452, 460 (1974). This Court believes and holds as a matter of law that administration of a breath test is a search within the meaning of the fourth amendment and is therefore subject to the requirements of that amendment. *Schmerber v. California*, 384 U.S. at 767, 86 S.Ct. at 1833.

One such requirement, as noted above, is the warrant requirement. The Municipality and the State have argued that if the demand for a breath sample is a search, it is one incident to arrest and therefore outside the warrant requirement. Petitioners argue that the breathalyzer test ought instead to be viewed as a consent search for which no consent was voluntarily given. As a consequence, it is argued, the search is *per se* unreasonable. Their basis for this argument lies in part in the contention that, since the cooperation of the suspect is required in providing the breath needed to activate the breathalyzer, such a search cannot be considered as a mere incident to arrest but must instead be considered a consent search.[5] Consent to such a search is lacking, they assert, where the suspect exercises his right to refuse to submit. Further basis for their view lies, they claim, in the fact that the Alaska legislature has specifically prohibited the administration of a chemical test of any kind if the driver refuses to submit voluntarily. Such a limitation on arresting officers is seen as indicating that a breath search is something other than one incident to arrest. This is a novel, subtle, and superficially forceful argument for which the petitioners have provided precious little authority.

Before resolving this issue, and indeed by way of resolving it and the remaining issues in this case, the Court takes notice of the social, legal, and political climate in which the dispute arises. The Supreme Court has noted the problems associated with drunk drivers in a lengthening series of cases culminating most recently in *South Dakota v. Neville*, 459 U.S. at 558, 103 S.Ct. at 919. ("The carnage caused by drunk drivers is well documented and needs no detailed recitation here."). In *Neville*, the Supreme Court held that the admission into evidence of a defendant's refusal to submit to a blood-alcohol test similar to the one involved in this case does not offend the fifth amendment privilege

---

**5.** Petitioners and respondents apparently have stipulated that the operation of the breathalyzer test depends upon the provision of alveolar air, which cannot be obtained without the cooperation of the suspect. This Court is unable to determine the accuracy of this contention, since the citations provided in its support appear to be erroneous. However, the Magistrate found that obtaining deep lung air depends upon the cooperation of the suspect, and this Court accepts that finding.

Throughout their arguments, petitioners shift subtly back and forth between discussion of "cooperation" with a breath test and "consent" for such a test. Ultimately it seems that petitioners, by accident or design, confuse the cooperation needed for a breath test, to which the law requires them to submit, and the consent required for a warrantless search outside the scope of a search incident to a lawful arrest or the consent which is implied from driving on the highways of the state. This distinction is discussed in several aspects in succeeding pages.

against self-incrimination. *Id.* at 564, 103 S.Ct. at 922. The same Court has recently dismissed on appeal for want of a substantial federal question a widely-publicized case from Minnesota in which that state's supreme court had held that the decision of a lawfully arrested driver regarding whether to submit to chemical testing is not a critical stage of the prosecution to which the sixth amendment right to counsel attaches. *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512, 515–16 (Minn. 1985), *appeal dismissed,* —— U.S. ——, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). The *Nyflot* court also had held that the limited questioning to which such a driver is subjected does not implicate the rights associated with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and turned aside due process and equal protection arguments as well. *Id.* at 516–17.

A police officer undoubtedly has the authority to search a person who has been lawfully arrested; it is the fact of the lawful arrest which establishes the authority to search. *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973). There has been no question raised here about the lawfulness of petitioners' arrests. Similarly, there has been no question raised about the reasonableness of the search method imposed upon petitioners. Nor can there be. The Supreme Court has expressly approved the extraction of blood samples as a commonplace, safe, non-traumatic, and effective means of determining the degree to which a person is under the influence of alcohol. *Schmerber v. California,* 384 U.S. at 771, 86 S.Ct. at 1836. Although the *Schmerber* holding was strictly limited to its facts, *id.* at 771–72, 86 S.Ct. at 1836, a breathalyzer test seems even less intrusive than the extraction of blood samples, and thus less deserving of protection under the fourth amendment than is a blood extraction.

■ Petitioners' argument that breath evidence sufficient to activate the breathalyzer may only be seized with the cooperation of the suspect and thus may not be

taken incident to arrest is of no avail here. No case has been cited for this proposition, and to this Court's knowledge, the scope of a search incident to arrest has not been narrowed in this way. The scope of a warrantless search is limited solely by the requirement that it be commensurate with the rationale that excepts the search from the warrant requirement in the first place. *Terry v. Ohio,* 392 U.S. at 19–20, 88 S.Ct. at 1878–79. The cases have consistently recognized the reach of the doctrine of the search incident to arrest. The search for destructible and evanescent evidence is as frequently encountered a rationale for justifying a search as incident to arrest as is the security of the arresting officer. *See Cupp v. Murphy,* 412 U.S. at 295, 93 S.Ct. at 2003; *United States v. Robinson,* 414 U.S. at 235, 94 S.Ct. at 476; *Schmerber v. California,* 384 U.S. at 770–71, 86 S.Ct. at 1835–36. In any event, a driver arrested lawfully for driving while intoxicated has no constitutional right to refuse to submit to a breath test. *South Dakota v. Neville,* 459 U.S. at 559, 103 S.Ct. at 920; *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d at 517. Such a test could constitutionally—if not physically—be administered against the suspect's will, *South Dakota v. Neville,* 459 U.S. at 559, 103 S.Ct. at 920, and the fact that a driver refuses to submit to the test does not create a constitutional distinction sufficient to remove the search from the lawful scope of a search incident to arrest.

■ To come at petitioners' argument from a slightly different perspective requires a brief consideration first of the nature of implied consent and second of the specific aspects of the statutes presently before the Court. By 1979, every state had adopted an implied consent statute as one means of removing drunk drivers from the highways. These statutes all basically provide that anyone operating a motor vehicle within the reach of the statute is deemed to have consented to a chemical test for intoxication at the request of any police officer having reasonable grounds to believe that the driver is intoxicated. Wheeler, *State v.*

*Armfield: No Right to Counsel under Montana's Implied Consent Statute,* 46 Mont.Law Rev. 349, 349 (1985). In some states, such as Alaska, a suspect may refuse the test.[6] The Alaska legislature and the Municipality of Anchorage have chosen to make that refusal a misdemeanor punishable by a fine of not less than $250 and imprisonment of not less than 72 consecutive hours. Such a refusal is also admissible evidence in a civil or criminal action arising from an act allegedly committed by the driver.

The Alaska legislature and the Anchorage assembly have thus determined that once a driver undertakes to operate a car within the state or city, he has consented to the taking of a breath sample. Having given his consent by operating a car on the state or city highways, a driver may not legally recant or withdraw such consent after being lawfully arrested for driving while intoxicated. Of course, the driver may choose not to cooperate in the providing of the breath sample, as is envisioned within the statutory language, but just as that lack of cooperation was no bar to a finding that a driver has no constitutional right to refuse the test, it ought not to be

seen as a lack of consent in the legal sense, for that consent has already been given.[7]

Petitioners' argument goes most seriously astray at just this point. Their continuing and vociferous assertion that the statute forces them to choose between giving their consent and suffering a deprivation overlooks the plain language of the law, which criminalizes not the withholding of consent, but rather the failure to submit to the chemical test. This distinction—no mere quibble—demonstrates the inappropriateness of Petitioners' reliance on *Schneckloth v. Bustamonte,* above.

■ Just as a driver's failure to cooperate in the search is no impediment to the classification of the proceeding as a search incident to arrest, the absence of cooperation is no bar to the characterization of the taking of breath as a consent search for which consent has already been supplied by the act of driving on Alaska roads, though this second conclusion is not necessary to a resolution of this matter. In the simplest terms, the driver stopped on probable cause for driving while intoxicated has no consent to withhold, at least for purposes of this fourth amendment analysis.[8]

**6.** The Court notes that, consistent with *Neville,* above, the legislature could repeal the implied consent law and direct police officers to administer chemical tests against the will of drivers lawfully stopped for driving while intoxicated. *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d at 517. In this context, it should also be noted that the Alaska Supreme Court has expressly noted that neither AS 28.35.031 nor AS 28.35.032(a) explicitly grants or recognizes a right on the part of an arrestee to refuse to take a breathalyzer test. *Wirz v. State,* 577 P.2d 227, 230 (Alaska 1978).

**7.** The Alaska Court of Appeals has examined the matter from a different perspective:

McCracken's argument confuses a legal concept, "consent", with a factual concept, "cooperation" or "assent". The two are substantially different. Consent in the constitutional sense is only required where the defendant has a legal right to refuse. As we have seen, a legally arrested defendant has no constitutional right to refuse a breathalyzer examination. True, he may fail to cooperate or give his assent to a breath test as a matter of fact, but failure to cooperate does not create a legal right where it would otherwise not exist....

[A] drunk driver's failure to cooperate in furnishing a breath sample does not give him a legal right to withhold breathalyzer evidence. *McCracken v. State,* 685 P.2d at 1280 (J. Singleton, concurring).

**8.** Petitioners argue that *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) compels a different conclusion. In *Camara,* the appellant had been charged with violating a municipal housing code ordinance, a misdemeanor, for refusing to consent to a warrantless administrative search of his residence. The Court held that the appellant had a constitutional right to insist that the inspector obtain a warrant, and that he could not constitutionally be convicted for refusal to consent to the search. *Id.* at 540, 87 S.Ct. at 1736. Because the court expressly conditioned its holding on the lack of exigent circumstances and distinguished the "time-honored doctrines applicable to criminal investigations", *id.* at 539, 87 S.Ct. at 1736, its holding is not controlling on the present situation. Indeed, insofar as the *Camara* court engaged in the traditional reasonableness analysis in reaching its conclusion, the case supports this Court's resolution of the matter now before it.

The other and closely related aspect of petitioners' challenge to the statutes under which they were convicted is their two-pronged attack under the equal protection clause of the fourteenth amendment, which in relevant part provides:

No state shall ... deny to any person within its jurisdiction the equal protection of the laws.

The Court must consider the assertion that the statutes have created a special class of citizens not protected by the fourth amendment, as well as the applicability of the unconstitutional condition doctrine.

Equal protection is the guarantee that similar people will be dealt with in a similar manner and that people of different circumstances will not be treated as if they were the same. Nowak, Rotunda, Young, *Constitutional Law,* 520 (1978). In applying the equal protection clause, the court faces the dilemma of balancing the legitimate function of judicial review with the deference traditionally owed to state and federal legislative functions. In recognition of this tension built into the constitutional system, courts traditionally make a threshold determination of the extent to which they will engage in a serious review of legislative acts. *Id.* at 522–24. Only if a governmental act classifies people in terms of their ability to exercise a fundamental right, or if it distinguishes between persons, in terms of any right, upon some suspect basis, will the court use a strict scrutiny standard of review. *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973); *see San Antonio School District v. Rodriguez,* 411 U.S. 1, 18–44, 93 S.Ct. 1278, 1288–1302, 36 L.Ed.2d 16 (1973). Petitioners argue that because the Alaska statutes impermissibly create a suspect classification and burden the exercise of a constitutional right, this Court should engage in a strict scrutiny of that legislation and require a compelling governmental interest accompanied by the absence of any less drastic alternatives.

The Court declines to undertake so rigorous a review of the Alaska legislation. As the previous discussion demonstrates, there is no constitutional right to refuse the search at issue here. It might therefore be said that drivers arrested for driving while intoxicated who are asked to submit to a chemical test are not, at that particular moment, protected by the fourth amendment.[9] For sound constitutional reasons, as well as for public policy concerns, drivers lawfully stopped may find no refuge in the fourth amendment from the legal consequences of their refusal to submit to a chemical test, and so, regardless of the existence of an implied consent statute, there is no fundamental right being burdened here. In the absence of a fundamental right, the strict scrutiny test is applicable only if the statute at issue creates a suspect classification based on race, nationality, or alienage. *United States v. Kras,* 409 U.S. at 446, 93 S.Ct. at 638. Petitioners have made no such allegation.

The appropriate standard of review is thus the rational relationship test. *Id.* Under this test, state legislation is entitled to a presumption of validity and should be upheld unless the varying treatment of different groups or persons is so unrelated to any combination of legitimate purposes that the court can only conclude the legislature's actions were irrational. *Parham v. Hughes,* 441 U.S. 347, 351–52, 99 S.Ct. 1742, 1745–46, 60 L.Ed.2d 269 (1979). In determining whether a chal-

---

**9.** The situation is analogous to the cases involving the taking of physical characteristic evidence, which the Supreme Court has held does not involve a search within the meaning of the fourth amendment. *United States v. Dionisio,* 410 U.S. at 14, 93 S.Ct. at 771. Neither the lawfully arrested driver who is asked to take a breath test nor the suspect asked to provide physical characteristic evidence may legally refuse on constitutional grounds. Assuming the existence of appropriate local statutes, both may be jailed for their refusal. Indeed, the Supreme Court has expressly approved the sanction of civil contempt with its accompanying imprisonment for refusing to provide voice exemplars to a grand jury. *United States v. Mara,* 410 U.S. at 20–22, 93 S.Ct. at 775–76.

Of course, nothing in the foregoing text suggests that such motorists are deprived of other fourth amendment protections, such as the right to challenge the validity of the stop.

lenged classification is rationally related to the achievement of a legitimate state purpose, the Court must answer two questions: (1) does the challenged legislation have a legitimate purpose; and (2) was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose? *Western & Southern Life Insurance Co. v. State Board of Equalization of California*, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981).

Any consideration of the legitimacy of the legislation at issue here must start with the plain and chilling statistics of drunken driving and highway deaths. In 1981, there were 1,531,400 arrests for drunken driving in the United States. U.S. Department of Justice, Report to the Nation on Crime and Justice, 51 (1983). At the same time, as the Supreme Court has observed, traffic deaths commonly exceed 50,000 annually in the United States and approximately one-half of these fatalities are alcohol related. *Mackey v. Montrym*, 443 U.S. 1, 17–18 n. 9, 99 S.Ct. 2612, 2620–21 n. 9, 61 L.Ed.2d 321 (1979).

The Alaska Supreme Court has determined that the implied consent statute and its sanctions were intended to provide an exclusive method for obtaining direct evidence of a suspect's blood-alcohol content. *Anchorage v. Geber*, 592 P.2d 1187, 1192 (Alaska 1979). The statute was intended to deter refusals to submit to chemical tests and to ensure that those who do refuse will gain no benefit from their refusal. *Jensen v. State*, 667 P.2d 188, 190 (Alaska Ct.App.1983). Both the Alaska Supreme Court and the United States Supreme Court have recognized the value of breathalyzer evidence in determining whether someone is too intoxicated to drive safely. *Wester v. State*, 528 P.2d 1179, 1181–83 (Alaska 1974); *Mackey v. Montrym*, 443 U.S. at 19, 99 S.Ct. at 2621 (characterizing the test as one "that provides the most reliable form of evidence of intoxication for use in subsequent proceedings"). The *Mackey* court noted several ways in which a state's interest in public safety might be advanced by a refusal statute:

First, the very existence of ... the statute serves as a deterrent to drunk driving. Second, it provides a strong inducement to take the breath-analysis test and thus effectuates the Commonwealth's interest in obtaining reliable and relevant evidence for use in subsequent criminal proceedings. Third, in promptly removing such drivers from the road, the ... statute contributes to the safety of the public highways.

*Id.* at 18, 99 S.Ct. at 2621. The purpose of the legislation at issue here is beyond a doubt legitimate, and the method chosen to advance that purpose is reliable, reasonable, and useful in providing for public safety.

The fact that the legislature has chosen to sanction a refusal to submit to the breath test by the imposition of criminal penalties including imprisonment changes none of the above conclusions. The sanction of imprisonment does not convert what is constitutionally permissible into an equal protection violation. Petitioners have not challenged the nature of the punishment *per se*, and they may not do so at this late date.

Although petitioners' unconstitutional condition argument has already been addressed implicitly, answering it directly and in practical terms will provide an opportunity to summarize the Court's holding. Petitioners' basic argument is that they have been deprived of their right to be free of unreasonable searches. Nothing in the Alaska statutes here at issue deprives them of that right, or otherwise burdens it. A motorist who has been stopped for driving while intoxicated and who wishes to vindicate himself has two choices under the law. He may take the test as the state prefers him to do. If he does, and the evidence obtained is favorable to him, he will gain his prompt release with no charge being made for drunk driving. *See Mackey v. Montrym*, 443 U.S. at 19, 99 S.Ct. at 2621. If the evidence is unfavorable, he may challenge the government's use of that evi-

dence by attacking the validity of the arrest. If he does not take the test, he can still challenge the evidence of his refusal by once again attacking the validity of the arrest. Either way, he remains fully capable of asserting the only fourth amendment right he possesses: the right to avoid arrest on less than probable cause. Thus, no improper condition has been placed on the exercise of petitioners' rights under the fourth amendment.

Petitioners' equal protection argument is without merit. All drivers lawfully stopped are treated equally, and further, from the perspective of the fourth and fourteenth amendments, those drivers are treated no differently from other sorts of persons suspected of committing criminal acts. This being so, petitioners' convictions are fully in accord with the requirements of the United States Constitution. Their petitions for writs of habeas corpus must be denied. Petitioners have asked, pursuant to 28 U.S.C. § 2253, for certification of probable cause to appeal. Probable cause is hereby certified.