# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### March 11, 2014 Session

## STATE OF TENNESSEE  v. JAMES DEAN WELLS

**Appeal from the Circuit Court for Williamson County**
**No. IICR017004      James G. Martin, III, Judge**

---

**No. M2013-01145-CCA-R9-CD - Filed October 6, 2014**

---

The defendant was indicted for driving under the influence of an intoxicant ("DUI"), DUI *per se*, simple possession, leaving the scene of an accident, and DUI (second offense) after his vehicle struck a utility pole and small building. The defendant refused law enforcement's request to test his blood in order to determine his blood alcohol content. The defendant's blood was taken pursuant to Tennessee Code Annotated section 55-10-406(f)(2) (2012) and without a warrant, despite his refusal to submit to testing. The defendant moved to suppress evidence of his blood alcohol content, alleging that his Fourth Amendment rights had been violated and that Tennessee Code Annotated section 55-10-406(f)(2) was unconstitutional. The trial court granted the motion to suppress, concluding that the statute was unconstitutional. The State sought and was granted permission to appeal, arguing that the blood was taken under exigent circumstances and that the implied consent law functioned to satisfy the consent exception to the warrant requirement. After a thorough review of the record, we conclude that the blood draw violated the defendant's right to be free from unreasonable searches and seizures because it was not conducted pursuant to an exception to the warrant requirement, and we affirm the suppression of the evidence. We determine that, although the blood draw was taken pursuant to the statute, the statute did not dispense with the warrant requirement and is therefore not unconstitutional as applied to the defendant.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed in Part; Affirmed in Part**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH, J., joined and NORMA MCGEE OGLE, J., concurs in results only.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel; Kim

R. Helper, District Attorney General; and Carlin C. Hess, Assistant District Attorney General, for the appellee, State of Tennessee.

Bernard F. McEvoy, Nashville, Tennessee, for the appellant, James Dean Wells.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The defendant was apprehended approximately one-half mile from the scene of an accident, and his blood was forcibly drawn after police determined there was probable cause to believe he had been driving while intoxicated and that he had a previous DUI conviction. The defendant moved to suppress the evidence of his blood alcohol content, arguing that the statute was unconstitutional and that his Fourth Amendment rights had been violated. The State responded that there were exigent circumstances supporting the search and that the defendant had no constitutional right to refuse.

At the suppression hearing, Officer Cory Kroeger testified that on May 12, 2012, at approximately 3:45 a.m., another officer called him to the site of an accident via radio. He arrived and saw that a truck had crossed the opposing lane of traffic and had gone off the road, striking a utility pole and a small building, completely destroying the front end of the vehicle, and cracking the foundation of the building. The unoccupied vehicle had Missouri tags and was registered to the defendant, and it was strewn with papers containing his local contact information. "At least" five officers had responded to the scene, and one of them was canvassing nearby hotels looking for the driver of the vehicle. The clerk at a hotel located a quarter of a mile from the accident indicated that a man had just come in asking to use the phone; the clerk had sent the man to a gas station one-half mile from the site of the accident.

The defendant was located at the gas station, emanating a strong scent of alcohol and standing unsteadily on his feet. Officer Kroeger testified that approximately twenty minutes had passed since he first responded to the accident. The defendant had abrasions on his shins

-2-

and forearms but denied driving his car that evening,[1] informing police that the car was at his apartment to the best of his knowledge. He acknowledged drinking at four bars that night, and he told police he had ridden to the bars on the back of a friend's motorcycle. The defendant agreed to take field sobriety tests and did not perform satisfactorily on four of the five tests. The tests took approximately twelve to fifteen minutes to complete. The defendant was subsequently arrested for DUI and other offenses. Officer Kroeger determined through dispatch that the defendant had a prior DUI conviction.

Officer Kroeger asked the defendant to submit to blood alcohol testing, and the defendant refused. Officer Kroeger read the implied consent law to the defendant. Officer Kroeger then took the defendant to the hospital across the street, where they were met by a sixth, supervising officer, for a nonconsensual blood draw. The blood was drawn at 5:30 a.m.

Officer Kroeger testified that he had never prepared a search warrant and did not know how long it would take. He testified that the jail, where a magistrate was available to issue warrants twenty-four hours per day, seven days each week, was a five to ten minute drive from the gas station. Officer Kroeger testified that the laptop in his vehicle did not have email or internet but could receive information through dispatch; he did not know if it was possible to get a warrant by telephone.

Casey Ashworth, a magistrate in Williamson County,[2] confirmed that a magistrate was always available in the jail to issue a warrant. He testified that it would usually take ten minutes to review and sign a warrant. Generally, there was not a line of officers seeking warrants, but when there was, the magistrates allowed time-sensitive matters to go first. He testified that to his knowledge, none of the magistrates at the jail had issued a warrant by telephone.

The trial court suppressed the evidence, concluding that the statute unconstitutionally mandated the blood draw. In holding the statute unconstitutional, the trial court found that Tennessee Code Annotated section 55-10-406(f)(2) creates a *per se* exception to the warrant requirement and mandates a warrantless search. The trial court concluded that the natural dissipation of blood alcohol was not, without more, a sufficient exigency to justify a

---

[1]While the defendant's motion to suppress also challenged Officer Kroeger's determination that there was probable cause to believe he was the driver of his vehicle, the trial court made no findings regarding the issue, and the issue is not raised on appeal.

[2]Mr. Ashworth testified he was still a magistrate at the time of his testimony but had stopped working for the county in 2010.

warrantless search[3] and that the statute was, therefore, unconstitutional. The trial court further found that exigent circumstances did not exist in this particular case. It based its conclusion on the fact that the wreck was discovered at 3:45 a.m.; that it took approximately twenty minutes to locate the defendant; that five officers were working the scene and available to assist with obtaining a warrant and transporting the defendant; that it would have taken approximately ten minutes to drive to the jail and ten to obtain a warrant; and that the defendant waited at the hospital, which was essentially across the street from the gas station, for an hour to have his blood drawn at 5:30 a.m.

The State applied for an interlocutory appeal, which the trial court approved and this court granted. On appeal, the State argues that the mandatory blood draw was supported by two exceptions to the warrant requirement: exigent circumstances and consent.

**ANALYSIS**

**I. Standard of Review**

A trial court's findings of fact made during a hearing on a motion to suppress are binding on an appellate court unless the evidence preponderates otherwise. *State v. Williamson*, 368 S.W.3d 468, 473 (Tenn. 2012). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences drawn from the evidence. *Id.* The trial court's application of law to the facts, however, is reviewed de novo with no presumption of correctness. *Williamson*, 368 S.W.3d at 473. Issues of constitutional interpretation and other questions of law are reviewed de novo. *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009).

**II. Prohibition Against Unreasonable Searches and Seizures**

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution prohibit unreasonable searches and seizures. Tennessee's constitutional protections regarding searches and seizures are identical in intent and purpose to those in the federal constitution. *State v. Turner*, 297 S.W.3d 155, 165 (Tenn. 2009). In evaluating whether a search or seizure has violated the federal or state constitutions, we keep in mind that "[r]easonableness is the 'touchstone of the Fourth Amendment.'" *State v.*

---

[3]The court's order was drafted prior to the United States Supreme Court's decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), which confirmed the trial court's understanding that the metabolization of alcohol is not, *per se*, an exigency.

*Talley*, 307 S.W.3d 723, 729 (Tenn. 2010) (quoting *Florida v. Jimeno,* 500 U.S. 248, 250 (1991)).  The Fourth Amendment "deems reasonable those searches conducted pursuant to a warrant issued 'upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'"  *State v. Scarborough*, 201 S.W.3d 607, 616 (Tenn. 2006) (quoting U.S. Const. amend. IV).

"[T]he physical intrusion occasioned by a blood draw 'infringes an expectation of privacy'" and the chemical analysis of blood is also an invasion of an individual's privacy interests.  *Id.* (quoting *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989)).  "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'"  *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013) (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)).  Accordingly, the blood of the accused cannot be drawn or analyzed unless the search is a reasonable one under the Fourth Amendment.  *Scarborough*, 201 S.W.3d at 616; *see Schmerber v. California*, 384 U.S. 757, 767 (1966).  A warrantless search is presumptively unreasonable, and "evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement."  *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).  One such exception is a search conducted under exigent circumstances to prevent the imminent destruction of evidence.  *Talley*, 307 S.W.3d at 729.  Another is consent.  *Id.*

The State contends that the blood draw in this case was constitutional under the exigent circumstances exception.  The State also submits that the search and the statute are both constitutional under the consent exception to the warrant requirement pursuant to the implied consent law.  Finally, the State argues that the statute is, in any event, constitutional because its silence on the subject of a warrant does not explicitly eliminate the warrant requirement.

### III. Exigent Circumstances

Because we "do not decide constitutional questions unless resolution is absolutely necessary to determining the issues in the case and adjudicating the rights of the parties," we first consider whether the search in this instance was justified under the exigent circumstances exception to the warrant requirement.  *Waters v. Farr*, 291 S.W.3d 873, 882 (Tenn. 2009) (quoting *State v. Taylor*, 70 S.W.3d 717, 720 (Tenn. 2002)); *see also Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) (noting that if issues can be resolved on non-constitutional grounds, the court should avoid ruling on constitutional issues).

In *Schmerber v. California*, the United States Supreme Court upheld a warrantless blood draw in a DUI case under the exigent circumstances exception to the warrant

requirement 384 U.S. 757, 770 (1966). The driver and his companion had both sustained injuries, and although the court emphasized that the exigency existed "[p]articularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident," *id.* at 770-71, several courts subsequently read *Schmerber* to stand for the proposition that the gradual disappearance of alcohol from the blood was itself an exigency which did away with the warrant requirement. *See*, *e.g.*, *State v. Shriner*, 751 N.W.2d 538, 545 (Minn. 2008) ("The rapid, natural dissipation of alcohol in the blood creates single-factor exigent circumstances that will justify the police taking a warrantless, nonconsensual blood draw from a defendant, provided that the police have probable cause to believe that defendant committed criminal vehicular operation"); *State v. Bohling*, 494 N.W.2d 399, 402 (Wis. 1993). In Tennessee, some courts likewise concluded that the changing nature of blood alcohol levels intrinsically constituted exigent circumstances. *State v. Humphreys*, 70 S.W.3d 752, 760-61 (Tenn. Crim. App. 2001) ("Based upon the fact that evidence of blood alcohol content begins to diminish shortly after drinking stops, a compulsory breath or blood test, taken with or without the consent of the donor, falls within the exigent circumstances exception to the warrant requirement."); *but see State v. Bowman*, 327 S.W.3d 69, 85 (Tenn. Crim. App. 2009) (analyzing circumstances of arrest and availability of warrant to determine the existence of exigent circumstances in vehicular homicide); *State v. Copeland*, No. W2000-00346-CCA-R3-CD, 2001 WL 359235 (Tenn. Crim. App. 2001) (same).

Last year, however, the Supreme Court clarified that *Schmerber* did not in fact create a *per se* exigency exempting blood alcohol tests from the warrant requirement. *Missouri v. McNeely*, 133 S. Ct. 1552, 1556 (2013) . Instead, the court concluded that the exigency must be determined based on the totality of the circumstances, and that the metabolization of alcohol was one of the factors to be considered in evaluating whether the circumstances were exigent. *Id.* at 1559, 1563. The Court held that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at 1561. The Court found it significant that technological innovations may make it possible to obtain a warrant without causing significant delay in the drawing of the blood of the accused. *Id.* at 1561-63.

The trial court here examined the totality of the circumstances and concluded that exigent circumstances did not exist. In making this determination, the trial court found that five officers were simultaneously investigating the incident, that a magistrate was on duty in a building ten minutes from the place where the defendant was apprehended, and that it took a magistrate an average of ten minutes to review a warrant. The trial court further found that the defendant waited at the hospital, which was essentially across the street from the gas station where he was apprehended, for approximately one hour until his blood was drawn at

5:30 a.m. These factual findings are binding on the appellate court unless the evidence preponderates otherwise. Based on the time elapsed between the violation and the blood draw, the speed with which a warrant could have been obtained, and the availability of law enforcement personnel to obtain the warrant, we conclude that the circumstances were not exigent, as the record demonstrates that police could have "reasonably obtain[ed] a warrant . . . without significantly undermining the efficacy of the search" and were, therefore, required to do so under the Fourth Amendment unless their actions were conducted pursuant to a separate exception to the warrant requirement. *McNeely*, 133 S.Ct. at 1561.

## IV. Consent

We turn next to the State's argument that implied consent under the statute constitutes a consent to the search which satisfies the requirements of the Fourth Amendment. If the State is correct, then both the drawing of the defendant's blood in this circumstance and the statutory mandate that blood be drawn will pass constitutional muster. When the motion to suppress was briefed and argued before the trial court, *McNeely* had not yet been decided, and the prosecutor focused his efforts on arguing exigency. The State's brief did cite some cases for the proposition that the right to refuse testing is statutory – based on the implied consent law – and not constitutional. The Rule 9 application did not raise the issue. While issues raised for the first time on appeal are generally waived, we choose to address the argument, as both parties have submitted briefs on the issue, and it is a question of law which does not require factual findings from the court below.

Consent is a separate exception to the warrant requirement. *State v. Talley*, 307 S.W.3d 723, 729 (Tenn. 2010). Determining whether an individual has voluntarily consented to a search is a question of fact which the court must evaluate from the totality of the circumstances. *State v. Scarborough*, 201 S.W.3d 607, 623 (Tenn. 2006). The consent required by the Fourth Amendment must be "'unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.'" *State v. Simpson,* 968 S.W.2d 776, 784 (Tenn. 1998) (quoting *State v. Brown,* 836 S.W.2d 530, 547 (Tenn. 1992)). The individual's will cannot have been overborne; instead the consent must be the product of a free and unconstrained choice. *State v. Cox,* 171 S.W.3d 174, 185 (Tenn. 2005).

### A. Implied Consent as an Exception to the Warrant Requirement in Tennessee

Tennessee Code Annotated section 55-10-406 provides:

> (a)(1) Any person who drives a motor vehicle in this state is
> deemed to have given consent to a test or tests for the purpose
> of determining the alcoholic content of that person's blood, a

> test or tests for the purpose of determining the drug content of the person's blood, or both tests.

T.C.A. § 55-10-406(a)(1) (2012). The statute provides that the test may only be administered when law enforcement has "reasonable grounds to believe" that the person was driving under the influence or had committed vehicular assault, vehicular homicide, or aggravated vehicular homicide as a proximate result of intoxication. *Id.* "Reasonable grounds" has been interpreted to mean probable cause. *State v. Bowery*, 189 S.W.3d 240, 248 (Tenn. Crim. App. 2004).

Because Tennessee decisions have overwhelmingly found the existence of exigent circumstances justifying blood tests, and because some decisions concluded that blood alcohol testing was a *per se* exigency dispensing with the warrant requirement of the Fourth Amendment, implied consent has not been a dispositive issue in our Fourth Amendment jurisprudence regarding DUI blood tests. *See Humphreys*, 70 S.W.3d at 760-61; *State v. Janosky*, No. M1999-02574-CCA-R3-CD, 2000 WL 1449367, at *4 (Tenn. Crim. App. Sept. 29, 2000); *Dodson v. Shaver*, No. 3-12-1032, 2013 WL 3305847, at *3 (M.D. Tenn. July 1, 2013) ("[Prior to *McNeely*] the law in the Sixth Circuit and Tennessee suggested compulsory blood draws with probable cause were generally justified because blood alcohol levels naturally diminish over time.").

Tennessee courts, however, have used sweeping language to suggest that implied consent is sufficient to meet the requirements of the Fourth Amendment. In *State v. Humphreys*, this court concluded that "[i]n addition to the exigent circumstances established by the nature of the evidence in cases involving intoxicated motorists, the statutorily created implied consent of the motorist permits the warrantless search of the motorist's breath or blood." *Humphreys*, 70 S.W.3d at 761 (citing *Janosky*, 2000 WL 1449367, at *4). *Humphreys* concluded that the act of driving a vehicle is simultaneously an act of consent to blood alcohol testing sufficient to satisfy the Fourth Amendment and that any blood alcohol tests are consequently not subject to the warrant requirement. *Humphreys*, 70 S.W.3d at 761; *see also Janosky*, 2000 WL 1449367, at *5 ("Consent is unnecessary as consent has already been obtained by the act of driving the motor vehicle."). The court concluded, "it is unnecessary for law enforcement officers to obtain the voluntary consent of an individual motorist before administering a breath test for alcohol concentration level." *Humphreys*, 70 S.W.3d at 761; *State v. Flittner*, M2000-02367-CCA-R3CD, 2001 WL 1597739, at *3 (Tenn. Crim. App. Dec. 14, 2001) (quoting *Janosky*, 2000 WL 1449367, at *4). Furthermore, this court in *Humphreys* described the right to refuse testing as a statutory, rather than a constitutional right. *Id.* at 761; *Janosky*, 2000 WL 1449367, at *5. This court has also observed that the statutory language that anyone who drives in Tennessee is deemed to have given consent "thereby supplements the constitutional basis for a warrantless drug

or alcohol test by deeming a motorist to have 'consented' to such a test." *State v. Gagne*, E2009-02412-CCA-R3-CD, 2011 WL 2135105, at \*8 (Tenn. Crim. App. May 31, 2011) (concluding that seizure was also made pursuant to the exigent circumstances exception and that the defendant did not refuse testing); *Janosky*, 2000 WL 1449367, at \*4 ("Thereby, anyone who exercises the privilege of operating a motor vehicle in this state has consented in advance to submit to a breath alcohol test.").

We note, however, certain facts distinguishing the instant case from the *Humphreys* line of cases. First, *Humphreys*, *Gagne*, and *Janosky* concluded that the evidence was also properly collected under the exigent circumstances exception to the warrant requirement. *Humphreys*, 70 S.W.3d at 760-61; *Gagne*, 2011 WL 2135105, at \*7; *Janosky*, 2000 WL 1449367, at\*4. Thus, the broad statements regarding the issue of consent can be read as mere dicta. Second, the *Humphreys* court emphasized that the defendant, who had a statutory right to refuse, had not in fact refused the test. *Humphreys*, 70 S.W.3d at 762-63; *see Gagne*, 2011 WL 2135105, at \*9 ("Further, nothing in the record suggests that the Defendant expressly refused to submit to the blood collection."); *Janosky*, 2000 WL 1449367, at \*5; *State v. Flittner*, 2001 WL 1597739, at \*4 (Tenn. Crim. App. Dec. 14, 2001). Finally, in none of these cases was the blood draw mandatory.

*State v. Jordan* addressed the constitutionality of the subsection of the statute[4] allowing blood alcohol content into evidence in cases involving a vehicular homicide. *State v. Jordan*, 7 S.W.3d 92, 99 (Tenn. Crim. App. 1999). In *Jordan*, the court affirmed prior caselaw that adopted the *Schmerber* test for the admissibility of evidence from a compelled blood test, including the requirement that exigent circumstances exist to forgo a warrant requirement. *Jordan*, 7 S.W.3d at 98-99 (citing *State v. Cleo Mason*, No. 02C01-9310-CC-00233, 1996 WL 111200, at \*7-8 (Tenn. Crim. App. Mar. 14, 1996)). The court held that

Because the Defendant points to no evidence in the record that

---

[4]At the time, Tennessee Code Annotated section 55-10-406(e) (1999) read:

> Nothing in this section shall affect the admissibility in evidence, in criminal prosecutions for aggravated assault or homicide by the use of a motor vehicle only, of any chemical analysis of the alcoholic or drug content of the defendant's blood which has been obtained by any means lawful without regard to the provisions of this section.

The substance of this subsection was located in subsection -406(d) in 2012 and has, with some revision, been moved to Tennessee Code Annotated section 55-10-406(d)(3).

he refused consent to the blood-alcohol test performed on him the night of the accident or that his blood was drawn in violation of the standards set forth in *Mason*, we conclude that the trial court properly denied the Defendant's motion to suppress the results of the test.

*Jordan*, 7 S.W.3d at 99. Because the analysis was conducted under the exigent circumstances exception to the warrant requirement, and because there was no evidence of refusal, the court did not address whether the statute provided constitutionally sufficient consent to the search.

It is apparent from the analysis in the above cases that blood draws in this State have always been subject to the Fourth Amendment. As a practical matter, the evanescent nature of blood alcohol evidence and the time required to obtain a warrant, as well as the previously overbroad interpretation of *Schmerber* in some decisions, ensured that blood draws were generally found to have been validly conducted under exigent circumstances. *See*, *e.g.*, *Cloyd v. State*, No. E2003-00125-CCA-R3-PC, 2003 WL 22477866, at *6 (Tenn. Crim. App. Nov. 3, 2003) (noting that "exigent circumstances, i.e., the natural dissipation of alcohol in the bloodstream over time, were present"). Despite the broad language of *Humphreys*, we have found no cases in this state, and the state cites to none, that rely on the implied consent law as the only exception to the warrant requirement.

## B. Implied Consent as an Exception to the Warrant Requirement in Other Jurisdictions

Other jurisdictions have also analyzed whether consent under an implied consent law is sufficient to satisfy the consent exception to unreasonable searches under the Fourth Amendment. Some courts have concluded that implied consent statutes satisfy the Fourth Amendment. In 1986, a federal district court in Alaska concluded that there was no constitutional right to refuse testing, that consent under the statute could not legally be withdrawn, and that the test could constitutionally – though perhaps not, without the driver's physical cooperation – be administered despite refusal. *Burnett v. Municipality of Anchorage*, 634 F. Supp. 1029, 1038 (D. Alaska 1986). That court concluded that a driver "has no consent to withhold" for Fourth Amendment purposes. *Id.* The Court of Appeals of Idaho likewise concluded that law enforcement could request the blood sample to gain the defendant's cooperation but "such consent is by no means constitutionally necessary." *State v. Cooper*, 39 P.3d 637, 639-40 (Idaho Ct. App. 2001). In *State v. Diaz*, the Idaho Supreme Court upheld a forcible blood draw based on its conclusion that the implied consent law satisfied the consent exception to the warrant requirement. *State v. Diaz*, 160 P.3d 739, 741-42 (Idaho 2007).

-10-

Some courts have come to the conclusion that such statutes establish consent even in light of the Supreme Court's decision in *McNeely*. In *State v. Brooks*, the Minnesota Supreme Court considered, in light of *McNeely*, the argument that the state's implied consent law was unconstitutional because the Legislature could not imply a waiver of the Fourth Amendment as a condition of granting the privilege to drive. 838 N.W.2d 563, 572 (Minn. 2013). That court concluded that, under *McNeely*, "[b]y using this 'legal tool' and revoking a driver's license for refusing a test, a state is doing the exact thing [the defendant] claims it cannot do—conditioning the privilege of driving on agreeing to a warrantless search." *Id.* The *Brooks* court, however, ultimately held that the defendant's consent was not implied because the defendant had actually consented to the search. *Id.* at 572-73. The Intermediate Court of Appeals of Hawaii held that "[t]he limited statutory right to refuse testing also does not mean that the driver's implied consent is not valid for purposes of the Fourth Amendment and Article I, Section 7." *State v. Won*, No. CAAP-12-0000858, 2014 WL 1270615, at *20 (Haw. Ct. App. May 2, 2014) *cert. granted* 2014 WL 2881259 (Hawai'i June 24, 2014). *Won* also noted that a driver's expectation of privacy was diminished by the law giving statutory notice of blood alcohol testing for intoxicated drivers. *Id.* at *21. After *McNeely* was released, the Superior Court of Delaware reconsidered case law allowing such draws under implied consent and concluded, "the Court does not view *McNeely* as prohibiting courts from finding that statutory implied consent satisfies the consent required for the consent exception." *State v. Flonnory*, 2013 WL 4567874, at *3 (Del. Super. Ct. July 17, 2013) (citing *State v. Cardona*, Nos. IN08-05-1014 to -1018, 2008 WL 5206771, at *5 (Del. Super. Ct. Dec. 3, 2008) for the proposition that implied consent is an exception to the warrant requirement).

However, none of these cases involved a forcible blood draw under a mandatory blood draw provision in a statute. *See*, *e.g.*, *Burnett*, 634 F. Supp. at 1031 (petitioners had refused consent to test, the test was not administered, and they were convicted under the implied consent law). Furthermore, some of these decisions found that the searches were justified under an independent exception to the warrant requirement. *Brooks*, 838 N.W.2d at 572-73 (concluding that the defendant had actually consented); *Won*, 2014 WL 1270615, at *19-21 (defendant chose to take breath test, had right of refusal, and breath test was minimally intrusive, as opposed to blood test); *Cooper*, 39 P.3d 637 at 640-41 (noting that the exigent circumstances exception under *Schmerber* "provides an alternative to implied consent" and that a sample obtained without force or verbal refusal was constitutionally reasonable); *Flonnory*, 2013 WL 4567874, at *3 (noting defendant never withdrew his statutory implied consent); *but see Diaz*, 160 P.3d at 741-42 (holding that implied consent functioned as an exception to the warrant requirement in the context of a forcible blood draw and declining to examine exigency).

Other jurisdictions have concluded that implied consent statutes do not, without

more, satisfy the dictates of the Fourth Amendment. Directly on point are several decisions by appellate courts in Texas. In *Aviles v. State*, the Court of Appeals of Texas initially concluded that a warrantless and forcible blood draw was permissible under the Fourth Amendment because it was taken pursuant to a mandatory blood draw provision for repeat DUI offenders. 385 S.W.3d 110, 116 (Tex. App. 2012). The court concluded that the statute "expands the State's ability to search and seize without a warrant, providing implied consent to obtain blood samples from persons suspected of driving while intoxicated, in certain circumstances, even without a search warrant." *Id.* at 115. The United States Supreme Court, however, vacated and remanded the decision for further consideration in light of *McNeely*. *Aviles v. Texas*, 134 S. Ct. 902 (2014). On remand, the court concluded that "the statutes were not substitutes for a warrant or legal exceptions to the Fourth Amendment warrant requirement." *Aviles v. State*, __S.W.3d __, No. 04-11-00877-CR, 2014 WL 3843756, at *3 (Tex. App. Aug. 6, 2014). Because the mandatory blood draw statute "is not a permissible exception to the warrant requirement," the blood draw was unconstitutional. *Id.*

Other Texas courts have likewise, in light of the remand of *Aviles*, concluded that the implied consent statute did not create an exception to the warrant requirement. *Weems v. State*, 434 S.W.3d 655, 665 (Tex. App. 2014) *petition for discretionary review granted* (Aug. 20, 2014) (concluding that the remand of Aviles implied that the implied consent statute was not in itself an exception to the warrant requirement); *Reeder v. State*, No. 06-13-00126-CR, 2014 WL 1862669, at *4 (Tex. App. Apr. 29, 2014) *petition for discretionary review granted* (Aug. 20, 2014) ("[I]n the absence of a warrant or exigent circumstances, taking Reeder's blood pursuant to Section 724 .012(b)(3)(B) of the Texas Transportation Code violated his Fourth Amendment rights."); *Sutherland v. State*, No. 07-12-00289-CR, 2014 WL 1370118, at *8 (Tex. App. Apr. 7, 2014) ("[I]t would seem that the position advanced in *Aviles* that the Texas Transportation Code's implied-consent provision applies to justify the warrantless mandatory blood draw of Section 724.012(b)(3)(B) is also constitutionally infirm."); *see also State v. Villarreal*, __S.W.3d __, No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex. App. Jan. 23, 2014) *petition for discretionary review granted* (May 07, 2014) (accepting the State's concession that there was no consent and concluding that "the constitutionality of the repeat offender provision of the mandatory blood draw law must be based on the previously recognized exceptions to the Fourth Amendment's warrant requirement").

The Arizona Supreme Court, faced with the "unconvincing[]" argument that the implied consent statute constituted actual, voluntary consent or created an exception to the Fourth Amendment's requirement for a warrant, concluded that "independent of [the statute], the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw." *State v. Butler*, 302 P.3d 609, 613 (Ariz. 2013). The court quoted *McNeely* for the proposition that "'[i]n those drunk-driving investigations where police officers can

reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so.'" *Id.* at 612 (quoting *McNeely*, 133 S. Ct. at 1561).

## C. Revocation of Consent

Courts have also found that, even if the implied consent derived from the act of driving a vehicle were sufficient to function as consent under the Fourth Amendment, such consent could be withdrawn for Fourth Amendment purposes. In general, consent maybe withdrawn or revoked. *State v. Cox*, 171 S.W.3d 174, 186 & n.11 (Tenn. 2005); *State v. Rowlett*, No. M2011-00485-CCA-R3-CD, 2013 WL 749502, at *13 (Tenn. Crim. App. Feb. 26, 2013) ("Once voluntary consent to search is given, it continues until it is revoked or withdrawn."). Accordingly, the United States District Court for the District of Maryland noted that even if consent could be derived from the state's implied consent statute, "it is clear that the defendant withdrew that consent." *United States v. Brown*, No. 13–po–01557, 2013 WL 5604589, at *4 n.1 (D. Md. Oct. 11, 2013); *see also State v. Declerck*, 317 P.3d 794, 804 (Kan. Ct. App. 2014) ("And, even if we were so inclined to accept the State's view [that the implied consent statute satisfied the Fourth Amendment], it is immaterial because Declerck withdrew her consent."); *People v. Harris*, 170 Cal. Rptr. 3d 729, 734 (Cal. App. Dep't Super. Ct. 2014) ("[I]t is no great innovation to say that implied consent is legally effective consent, at least so long as the arrestee has not purported to withdraw that consent"); *State v. Padley*, 849 N.W.2d 867, 879 (Wis. Ct. App. May 22, 2014) (noting that, under the implied consent law, a driver may choose to give a blood sample and thereby give actual consent or may choose to withdraw consent, which is an unlawful act penalized by license revocation). Not all courts, however, have concluded that consent can be withdrawn. *See Rowley v. Commonwealth*, 629 S.E.2d 188, 191 (Va. Ct. App. 2006) (holding that "[t]he act of driving constitutes an irrevocable, albeit implied, consent to the officer's demand for a breath sample" and to allow it to be withdrawn would nullify the statute); *Won*, 2014 WL 1270615, at *21 (holding that the purpose of the implied consent statute would be defeated if consent could be withdrawn). *Burnett* and *Cooper*, for instance, both distinguished between a driver's physical refusal to cooperate – which was protected by statute – and a driver's legal consent, which the cases held could not be withdrawn. *Burnett*, 634 F. Supp. at 1038 & n.7; *Cooper*, 39 P.3d at 641.

Tennessee courts have generally not addressed the withdrawal of consent under the implied consent law. In *State v. Cochran*, the defendant consented to his blood being drawn but purported to presently withdraw that consent prior to the chemical analysis after conferring with his attorney. *State v. Cochran*, M2006-02175-CCA-R3-CD, 2007 WL 2907281, at *1 (Tenn. Crim. App. Oct. 1, 2007). Although this court recited the fact that the

defendant's right to refuse was not constitutional, it also ultimately determined that the defendant had given consent at the critical time, which was the drawing of the blood and not its analysis. *Id.* at *3.

While the defendant here clearly attempted to revoke any implied consent, we decline to analyze the consent exception on the basis of revocation. We instead premise our decision regarding whether the implied consent law provides an exception to the warrant requirement in the context of a forced blood draw on a more general Fourth Amendment analysis.

### D. Forcible Blood Draw and Reasonableness

As noted above, the bulk of the decisions holding that the act of driving functioned as consent for Fourth Amendment purposes did not do so in the context of a forcible blood draw. However, we note that some of the decisions pointed out that the State's authority to revoke a license for failure to consent to the search is also premised on the interpretation that the law grants consent sufficient to create a Fourth Amendment exception. As the *Brooks* court stated, "[b]y using this 'legal tool' and revoking a driver's license for refusing a test, a state is doing the exact thing [the defendant] claims it cannot do—conditioning the privilege of driving on agreeing to a warrantless search." *Brooks*, 838 N.W.2d at 572.

We find caselaw regarding consent to search as a condition of the granting of probation or parole instructive. In *State v. Davis*, a probationer who had signed a consent form as a condition of his probation refused officers permission to search his home, and the search was performed without his consent. *State v. Davis*, 191 S.W.3d 118, 119 (Tenn. Crim. App. 2006). The court quoted the analysis in *United States v. Knights*, 534 U.S. 112, 114, 122 S.Ct. 587, 589 (2001), also addressing a consent provision which attached as a condition of probation, that the reasonableness of a search must be assessed by the degree to which it intrudes on privacy and the degree to which it is necessary for the promotion of a legitimate governmental interest. *Davis*, 191 S.W.3d at 120. The court cited *Knights*'s conclusion that probation is a criminal sanction which diminishes the expectation of privacy and that the governmental interest was strong. *Id. Knights* explicitly pretermitted the question of whether consent to the terms of provision operated as consent constituting an exception to the warrant requirement. *Knights*, 534 U.S. 112, 118. Instead, the *Knights* court concluded that the search was, under the totality of the circumstances, reasonable. *Id.* The *Davis* court also refused to address the constitutionality of the search provision, concluding instead that the search was valid because the provision was reasonably related to the conditions of probation, the search was supported by reasonable suspicion, and the refusal to submit to the search was a violation of the conditions of probation. *Davis*, 191 S.W.3d at 121-22. The *Davis* court went on, however, to conclude that the signed waiver of the probationer's Fourth Amendment rights was voluntary and that the waiver was therefore valid. *Id.* at 122.

-14-

The Tennessee Supreme Court in *State v. Turner* concluded that the "the Tennessee Constitution permits a parolee to be searched without any reasonable or individualized suspicion where the parolee has agreed to warrantless searches by law enforcement officers." 297 S.W.3d 155, 166 (Tenn. 2009). *Turner* followed the United States Supreme Court's decision in *Samson v. California*, where a parolee had agreed, as a condition of release, to be subject to a search at any time and without cause. 547 U.S. 843, 846 (2006). The United States Supreme Court again declined to address the issue of whether this written waiver operated as consent within the meaning of the Fourth Amendment, concluding instead that the search was reasonable under the totality of the circumstances. *Id.* at 852 n.3. *Turner* likewise did not analyze based on consent.

In *People v. Harris*, the California Appellate Departments of the Superior Court observed that a forcible blood draw was "categorically different" from a blood draw performed with consent granted under persuasion from the implied consent law. 170 Cal. Rptr. 3d 729, 733 (Cal. App. Dep't Super. Ct. 2014). The *Harris* court ultimately concluded that "in these cases the implied consent law gives way to the constitutional rules of *Schmerber* and its progeny." *Id.* at 736 (upholding search because defendant consented under persuasion of the implied consent law). In *Hannoy v. State*, the Court of Appeals of Indiana likewise concluded that, while the legislature could condition the privilege of driving upon submitting to a chemical test in certain circumstances, it could not abrogate the Fourth Amendment right to be free from unreasonable searches. 789 N.E.2d 977, 987 (Ind. Ct. App. 2003) (holding that blood draw was unconstitutional and that implied consent law did not function as an exception to the warrant requirement where there was no probable cause to believe that the defendant was intoxicated and the defendant did not explicitly consent to the draw). We find this reasoning to be persuasive.

The touchstone of the Fourth Amendment is reasonableness. *Florida v. Jimeno,* 500 U.S. 248, 250 (1991). "What is reasonable, of course, 'depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself.'" *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). As noted above, the reasonableness of a search must be assessed by the degree to which it intrudes on privacy and the degree to which it is necessary for the promotion of a legitimate governmental interest. *Davis*, 191 S.W.3d at 120. Likewise, determining whether the use of force to effect a search is reasonable requires balancing the nature and quality of the intrusion on the individual's rights against the government's interests. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

We recognize that the State's interest in preventing driving while intoxicated is legitimate, substantial, and compelling. However, the State's ability to suspend a driver's license for failure to abide by the implied consent law implicates very different privacy

interests from the State's ability to forcibly draw blood. *See Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001) (noting that the denial of a benefit is "a less serious intrusion on privacy" than the sharing of medical information with third parties). The "consent" inherent in the implied consent law is generally consent to either submit to testing or to accept the consequences of a refusal of testing, including a loss of license. In contrast, the State here advances the argument that exercising the privilege of driving constitutes consent for a forcible blood draw. "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *McNeely*, 133 S. Ct. at 1558 (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)). "That . . . the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." *Schmerber*, 384 U.S. at 772.

While the State may attempt to persuade the accused to submit to a search by providing consequences for a failure to submit to a test ordered upon probable cause,[5] we hold that the privilege of driving does not alone create consent for a forcible blood draw. Given the gravity of the intrusion into privacy inherent in a forcible blood draw, we conclude that such a search is not reasonable unless performed pursuant to a warrant or to an exception to the warrant requirement. The implied consent law does not, in itself, create such an exception.

We further find *McNeely* instructive on this issue. In a section of the opinion joined by three Justices, Justice Sotomayor notes that "all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." *McNeely*, 133 S.Ct. at 1566. The opinion goes on to state that "[s]uch laws impose significant consequences *when a motorist withdraws consent*; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution." *Id.* (emphasis added). We note also that the remand of *Aviles* for reconsideration in light of *McNeely* casts doubt on the argument that the implied consent law can in itself do away with the warrant requirement.

This is not, of course, to say that the State cannot obtain a blood sample from the accused in contravention of his or her wishes. We merely conclude that such a sample must be taken in compliance with the Fourth Amendment – that is, it must be supported by a warrant issued by an independent magistrate finding probable cause or by exigent

---

[5]While the statute also uses the term "reasonable grounds," this phrase has been interpreted to mean probable cause. *Bowery*, 189 S.W.3d at 248.

-16-

circumstances, voluntary consent, or some other exception to the warrant requirement. The implied consent law does not, in itself, satisfy any of these exceptions in the context of a forcible blood draw.

## V. Constitutionality of the Statute

Having concluded that neither exigent circumstances nor consent have brought the search in this case into compliance with the Fourth Amendment, we conclude that the defendant's Fourth Amendment rights were violated when his blood was drawn without a warrant pursuant to the statute. The defendant argues that, because the statute required officers to draw his blood, the statute itself is unconstitutional. The trial court agreed, concluding that no exception to the warrant requirement applied and that the statutory mandate to draw the defendant's blood rendered the statute unconstitutional. The State cannot, through legislation, strip an accused of constitutional rights.

In construing a statute, the appellate court must first ascertain and give full effect to the General Assembly's intent and purpose, without either broadening or restricting the statute's intended scope. *Waters v. Farr*, 291 S.W.3d 873, 881 (Tenn. 2009). In interpreting a statute, we begin with the words of the statute, and we "must (1) give these words their natural and ordinary meaning, (2) consider them in the context of the entire statute, and (3) presume that the General Assembly intended that each word be given full effect." *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008). When the statutory language is clear and unambiguous, we need not look beyond the statute itself but enforce it as written. *Id.* Where the statutory language is ambiguous, the court must look to the entirety of the statutory scheme to ascertain legislative intent. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). "Statutes 'in pari materia' — those relating to the same subject or having a common purpose — are to be construed together." *Id.*

When a litigant challenges the constitutionality of a statute, the court must begin with a presumption that the statute is constitutional. *Gallaher v. Elam*, 104 S.W.3d 455, 459 (Tenn. 2003). "We must 'indulge every presumption and resolve every doubt in favor of the statute's constitutionality.'" *Id.* (quoting *State v. Taylor,* 70 S.W.3d 717, 721 (Tenn. 2002)). In a facial challenge to the constitutionality of a statute, the litigant must show that "no set of circumstances exists under which the statute, as written, would be valid." *Waters v. Farr*, 291 S.W.3d at 882.

## A. Right of Refusal

## 1. Statutory Language

In evaluating the constitutionality of Tennessee Code Annotated section 55-10-406, we begin by determining whether the statute in fact mandated the blood draw. Accordingly, we begin by looking at the plain language of the statute. Tennessee Code Annotated section 55-10-406 has undergone numerous revisions in recent years. At the time of the defendant's violation, the statute detailing the situations in which a blood alcohol testing "shall" be performed for repeat offenders read as follows:

> (f)(2) If a law enforcement officer has probable cause to believe that the driver of a motor vehicle has committed a violation of § 39-13-213(a)(2), § 39-13-218 or § 55-10-401 and has been previously convicted of § 39-13-213(a)(2), § 39-13-218 or § 55-10-401, the officer shall cause the driver to be tested for the purpose of determining the alcohol or drug content of the driver's blood. The test shall be performed in accordance with the procedure set forth in this section and shall be performed regardless of whether the driver does or does not consent to the test.

T.C.A. § 55-10-406(f)(2) (2012).[6] Tennessee Code Annotated sections 39-13-213(a)(2), 39-13-218, and 55-10-401 criminalize vehicular homicide as the proximate result of the driver's intoxication, aggravated vehicular homicide as the proximate result of the driver's intoxication, and driving under the influence of an intoxicant, respectively. Subsection (f) also makes testing mandatory in cases in which an officer has probable cause to believe that the violation was committed by the driver of a motor vehicle involved in an accident resulting in the injury or death of another or if the officer has probable cause to believe a violation of one of the sections occurred while a child under sixteen was a passenger in the vehicle. T.C.A. § 55-10-406(f)(1), (f)(3) (2012).

These subsections, which mandate that the officer "shall" cause the driver to be tested, must be read in pari materia with subsection (a)(4)(A), which imposes consequences for a refusal to abide by the implied consent law and cooperate with blood alcohol testing:

> (4)(A) Except as required by subsection (f), court order or

---

[6]The statute has since been amended, and the provisions regarding mandatory testing are now located in subsection 55-10-406(d)(5).

search warrant, if such person is placed under arrest, requested by a law enforcement officer to submit to either or both tests, advised of the consequences for refusing to do so, and refuses to submit, the test or tests to which the person refused shall not be given, and the person shall be charged with violating this subsection (a). . . . If the court finds that the driver violated this subsection (a), except as otherwise provided in subdivision (a)(5), the driver shall not be considered as having committed a criminal offense; however, the court shall revoke the license of the driver for a period of:

(i) One (1) year, if the person does not have a prior conviction for a violation of § 55-10-401, § 39-13-213(a)(2), § 39-13-218, § 39-13-106, or § 55-10-418, in this state, or a similar offense in any other jurisdiction;

(ii) Two (2) years, if the person does have a prior conviction for an offense set out in subdivision (a)(4)(A)(i);

(iii) Two (2) years, if the court finds that the driver of a motor vehicle involved in an accident, in which one (1) or more persons suffered serious bodily injury, violated this subsection (a) by refusing to submit to such a test or tests; and

(iv) Five (5) years, if the court finds that the driver of a motor vehicle involved in an accident in which one (1) or more persons are killed, violated this subsection (a) by refusing to submit to such a test or tests.

T.C.A. § 55-10-406(a)(4)(A) (2012).[7] The first sentence of the subsection states that "except as required by subsection (f), court order or search warrant," the test will not be administered upon refusal.[8] However, the enumerated consequences of a refusal to submit to testing

---

[7]The statute has since been revised. The first sentence of this subsection is now located in Tennessee Code Annotated section 55-10-406(d)(1), and the penalties have been moved to Tennessee Code Annotated section 55-10-407.

[8]On May 9, 2012, prior to the defendant's violation, the Legislature amended this subsection essentially by adding the opening clause, excepting from the statutory right of refusal blood tests that are taken pursuant to subsection (f), court order, or a search warrant.

include revocation of the driver's license of the accused in certain circumstances covered by subsection (f), including a prior DUI or an accident involving death.

Accordingly, the language of the statute both explicitly forbids a right of refusal in these circumstances and simultaneously contemplates a separate punishment for exercising a right of refusal. Without the ability to refuse, the sections regarding revocation of a license in the event of refusal could be read as surplusage. We conclude that the statutory language is ambiguous and turn to the legislative history of the law.

### 2. Legislative history

The implied consent statute initially did not provide for a mandatory blood draw in any circumstances. In 2009, the Legislature decided to add a mandatory draw provision in cases where an officer had probable cause to believe that the driver of a vehicle involved in an accident resulting in the death or injury of another had committed vehicular homicide or aggravated vehicular homicide as a proximate result of intoxication or was driving under the influence of an intoxicant. *See* 2009 Pub. Acts ch. 324. The House committee and subcommittee discussions centered around a concern that hospital personnel would refuse a forcible blood draw for fear of incurring liability. *See* Hearing on H.B. 355 Before the H. Judiciary Criminal Practice & Procedure Sub-Comm., 106th Gen. Assembly (Tenn. Mar. 18, 2009); Hearing on H.B. 355 Before the H. Judiciary Comm., 106th Gen. Assembly (Tenn. Mar. 25, 2009). The bill's sponsor summarized the law as a "bill [that] will mandate what they're already doing," describing it as a clarification of the current law. Hearing on H.B. 355 Before the H. Judiciary Criminal Practice & Procedure Sub-Comm., 106th Gen. Assembly (Tenn. Mar. 18, 2009) (statement of Rep. Jim Hackworth). During a sub-committee meeting, Representative Eddie Bass raised the possibility that the accused would resist and be strapped down for a forcible draw and questioned if civil liability would arise. *Id.* (statement of Rep. Eddie Bass). Deputy Legislative Attorney Tom Tigue agreed that medical personnel were reluctant to risk liability from broken needles and other complications of a forced draw. *Id.* (statement of Tom Tigue, Deputy Legislative Attorney).

When the section extending the mandatory draw to DUI repeat offenders and those with child passengers was added in 2011, *see* 2011 Pub. Acts ch. 307, Tom Kimball, the Tennessee traffic safety resource prosecutor from the District Attorney Generals Conference, testified before both the House and Senate committees. Mr. Kimball summarized that the bill added certain classes of persons to those who would not be able to refuse testing, and he recited that the right of refusal is a "legislative largesse" and not a constitutional right. Hearing on H.B. 715 Before H. Judiciary Comm., 107th Gen. Assembly (Tenn. Apr. 19, 2011); *see* Hearing on S.B. 1270 Before Sen. Judiciary Comm., 107th Gen. Assembly (Tenn. May 11, 2011); *see also State v. Janosky*, No. M1999-02574-CCA-R3-CD, 2000 WL

1449367, at *6 (Tenn. Crim. App. Sept. 29, 2000). He also expressed an understanding that under *Schmerber*, there was no right of refusal because the circumstances would, by definition, be exigent. Hearing on H.B. 715 Before H. Judiciary Comm., 107th Gen. Assembly (Tenn. Apr. 19, 2011); Hearing on S.B. 1270 Before Sen. Judiciary Comm., 107th Gen. Assembly (Tenn. May 11, 2011). Mr. Kimball explained that the draw would be performed through force if necessary. Hearing on H.B. 715 Before H. Judiciary Comm., 107th Gen. Assembly (Tenn. Apr. 19, 2011). During the vote in the House, when a representative questioned whether the accused would be held down for a forcible draw, Representative Vince Dean answered that the hospital would have the means to withdraw blood "without a fight." Hearing on H.B. 715 on the House Floor, 107th Gen. Assembly (Tenn. May 11, 2011) (statement of Rep. Vince Dean). Representative Ryan Haynes also asked whether the accused would be held down for the needle, to which the bill's sponsor replied that a person refusing to go to jail would likewise be transported to jail by force. *Id.* (statement of Rep. Tony Shipley).

We conclude from the references in the legislative history to restraining the accused to obtain the sample that the legislature did not intend to create any right of refusal under subsection (f). Subsections (a)(4)(A)(ii)-(iv), then, are best read as creating a system of consequences for circumstances in which the accused refuses to cooperate with the blood draw but the blood draw is performed despite a refusal to cooperate. *See*, *e.g.*, *Burnett*, 634 F. Supp. at 1038 & n.7.

## B. Dispensation of Warrant Requirement

Even if the Legislature did not intend to allow the accused to refuse a blood draw, the statute is not unconstitutional unless the circumstances of the compelled draw violate the prohibition against unreasonable searches and seizures. The State argues that, as the statute does not reference a warrant at all, it does not dispense with the warrant requirement. The plain text of the statute indeed does not reference a warrant. We conclude that the statutory language is ambiguous. In particular, subsection (a)(4)(A) grants a right of refusal "[e]xcept as required by subsection (f), court order or search warrant." The statutory language referencing subsection (f), a court order, and a search warrant as alternative bases for mandatory testing suggests an ambiguity regarding the Legislature's intentions.

The legislative history of the 2009 addition of subsection (f) related to the mandatory draw reflects the legislature's (not, at the time, unreasonable) understanding that any Fourth Amendment concerns were generally allayed by the exigent circumstances exception to the warrant requirement. When the 2009 mandatory draw subsection for accidents involving injuries and deaths was added, the bill's sponsor in the House introduced the bill with a discussion that essentially clarified that the draw would occur under exigent circumstances.

-21-

*See* Hearing on H.B. 355 Before the H. Judiciary Criminal Practice & Procedure Sub-Comm., 106th Gen. Assembly (Tenn. Mar. 18, 2009) (statement of Rep. Jim Hackworth). In the House subcommittee, the question was raised whether a warrant was required by the statute, and Tom Tigue, Deputy Legislative Attorney, responded that as written there was no requirement for a search warrant, citing the evanescent nature of blood alcohol evidence. *Id.* (statement of Rep. Tom Tigue, Deputy Legislative Attorney). The bill's sponsor represented that it would be difficult to get a warrant in the requisite two hours. *Id.* (statement of Rep. Jim Hackworth).

In 2011, Tom Kimball, the Tennessee traffic safety resource prosecutor from the District Attorney Generals Conference, told the legislative committees of both houses that under *Schmerber*, the circumstances would be exigent. Hearing on H.B. 715 Before H. Judiciary Comm., 107th Gen. Assembly (Tenn. Apr. 19, 2011); Hearing on S.B. 1270 Before Sen. Judiciary Comm., 107th Gen. Assembly (Tenn. May 11, 2011). Mr. Kimball elaborated that under current Tennessee caselaw, a blood draw in a fatal or serious-injury accident would always be conducted pursuant to the exigent circumstances exception. *Id.*

In 2012, the Legislature amended the statute in response to the legal interpretation that the statutory right of refusal prevented the administration of the test even pursuant to a warrant. *See* 2012 Pub. Acts ch. 892; Hearing on H.B. 2752 Before H. Judiciary Sub-Comm., 107th Gen. Assembly (Tenn. Feb. 15, 2012); *Tenn. Op. Att'y Gen.*, No. 10-01, 2010 WL 321243, at *2 (Tenn. A.G. Jan. 13, 2010) ("Outside the context of accidents resulting in the injury or death of another, then, testing conducted over the motorist's express refusal of consent, even by warrant, is not legal for purposes of the statute."). The amendment resulted in carving out, from the statutory right to refuse testing, an exception for the circumstances described in subsection (f), a court order, or a search warrant.[9] While the

---

[9]Subsection (a)(4)(A) formerly read:

> If such person, having been placed under arrest and then having been requested by a law enforcement officer to submit to either or both tests, and having been advised of the consequences for refusing to do so, refuses to submit, the test or tests to which the person refused shall not be given, and the person shall be charged with violating this subsection (a).

The bill substituted the sentence:

> Except as required by subsection (f), court order or search warrant, if such person, is placed under arrest, requested by a law enforcement officer to submit to either or both tests, advised of the

-22-

history of the bill in the Senate is sparse, there was extensive discussion in the House regarding the bill. This discussion did not focus on subsection (f), but instead on the other exceptions in the amendment: a court order or search warrant. The discussion clarified the fact that it was a legislative oversight to allow the possibility of a statutory right of refusal in the face of a warrant. Hearing on H.B. 2752 on H. Floor, 107th Gen. Assembly (Tenn. Apr. 5, 2012). The bill's sponsor, Representative Tony Shipley, assured the House during the discussion that "[t]he failure to issue such a warrant means no test can be given," and that "[w]ithout the warrant, no sample will be taken." *Id.* (statement of Rep. Tony Shipley).

The legislative history, accordingly, reflects an understanding that the blood draw will be taken pursuant to either a warrant or an exception to the warrant requirement. Under *McNeely*, of course, not all DUI cases will fall under the exigent circumstances exception. We have already determined that when exigent circumstances do not exist, the Constitution requires either a warrant or some other exception to the warrant requirement.

We agree with the State that in this case, the statute's silence did not dispense with the warrant requirement. Although we have upheld the trial court's determination that there were no exigent circumstances or other exceptions to the warrant requirement, the statute, by mandating the blood draw, did not require Officer Kroeger to draw the defendant's blood without first obtaining a warrant. Had Officer Kroeger sought a magistrate, the magistrate would have had the opportunity to independently determine whether there was probable cause to support the search. *See Schmerber*, 384 U.S. at 770 ("The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence of guilt is indisputable and great.").

A Texas court, faced with a similar argument, also concluded that the implied consent statute's silence on the subject of a warrant did not do away with the warrant requirement. In *State v. Villarreal*, law enforcement had probable cause to arrest the defendant for DUI and conceded there were no exigent circumstances to do away with the warrant requirement and that there was no consent. *State v. Villarreal*, __S.W.3d __, No. 13-13-00253-CR, 2014 WL 1257150, at *10, 11 (Tex. App. Jan. 23, 2014). The defendant's blood was forcibly drawn under a statutory provision similar to that at issue in this case. *Id.* at *11. The court concluded that the statute mandating a blood draw did not require law enforcement to draw blood without first obtaining a warrant. *Id.* The court elaborated that "[i]n fact, the statute does not address or purport to dispense with the Fourth Amendment's warrant requirement for blood draws," and it refused to interpret the statute's silence as a

consequences for refusing to do so, and refuses to submit, the test
or tests to which the person refused shall not be given, and the
person shall be charged with violating this subsection (a).

dispensation of the warrant requirement. *Id.* at *11 & n.12.

We note that we are not faced here with a situation in which the statute requires a blood draw, but there is not probable cause to believe that a blood draw would have any evidentiary value. The Fourth Amendment requires that there be probable cause to believe the search will reveal evidence. *See State v. Jordan*, 7 S.W.3d 92, 99 (Tenn. Crim. App. 1999) (requiring "a clear indication that evidence of the accused's intoxication will be found if the blood is taken from the accused's body and tested" (quoting *State v. Cleo Mason*, No. 02C01-9310-CC-00233, 1996 WL 111200, at *7-8 (Tenn. Crim. App. Mar. 14, 1996))); *see also Schmerber*, 384 U.S. at 770 (concluding that, when a search is conducted through intrusions into the human body, the Fourth Amendment requires not a mere chance but a clear indication that evidence will be found); *State v. Gagne*, E2009-02412-CCA-R3-CD, 2011 WL 2135105, at *7 (Tenn. Crim. App. May 31, 2011) (noting that under exigent circumstances exception, law enforcement needed only probable cause to believe the motorist had consumed an intoxicant and that testing the motorist's blood would reveal evidence). The drafters of the statute here, on the other hand, have included no such limitation. A situation in which the blood would have no evidentiary value might arise, for instance, if a law enforcement officer had probable cause to believe that the driver of a motor vehicle had committed a violation of section 55-10-401 and had previously been convicted of a DUI – triggering the statute – but the suspect was not apprehended until there was no longer probable cause to believe that any alcohol remained in the suspect's bloodstream. In such a case, of course, there would neither be probable cause to issue a warrant for the blood draw nor exigent circumstances to uphold the search.

We conclude that, in this case, the statute did not mandate a blood draw in violation of the Fourth Amendment. Although the State did not in fact procure a warrant, this failure to act was not undertaken pursuant to statutory authority. *See Villarreal*, 2014 WL 1257150, at *11 ("Although we agree that the statute required the officer to obtain a breath or blood sample, it did not require the officer to do so without first obtaining a warrant."). Accordingly, we refrain from finding the statute unconstitutional as applied to this defendant under the particular facts of this case.

## CONCLUSION

We conclude that Tennessee Code Annotated section 55-10-406(f)(2) (2012) did not mandate the State to draw the defendant's blood without a warrant, and we accordingly refrain from finding it unconstitutional as applied to this defendant. However, the evidence was obtained in violation of the defendant's Fourth Amendment rights, it must be suppressed,

and we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE